# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TEXAS TYLER DIVISION

| | | |
|---|---|---|
| JAMON HESTAND, | § | |
| PLAINTIFF | | |
| | § | |
| V. | § | CASE NUMBER 6:20-CV-00071 |
| | § | |
| CAPTAIN, JAMADRE ENGE | § | |
| CAPTAIN, CAPTAIN, OLIN C. STATHAM, JR. | | |
| CAPTAIN, CAPTAIN, JASON M. GOULD | § | |
| CHAPLAIN, SAMUEL C. ARCIPRESTE | § | |
| CHAPLAIN, RANDALL S. CLARKE | § | |
| CHAPLAIN, THOMAS R. TAYLOR | § | |
| CORRECTIONS INSTITUTION DIVISION | § | |
| DIRECTOR, | § | |
| BOBBY LUMPKIN | § | |
| FORMER CORRECTIONS INSTITUTION | § | |
| DIVISION DIRECTOR, | § | |
| LORIE DAVIS | § | |
| CORRECTIONS OFFICER, VICTOR V. AFUN | § | |
| CORRECTIONS OFFICER, BARBARA NEAL | § | |
| CORRECTIONS OFFICER, AGUILAR | § | |
| CORRECTIONS OFFICER, MICHAEL O. | § | |
| CASTEEL, | § | |
| CORRECTIONS OFFICER, LOURENS A. | § | |
| JACKSON | § | |
| CORRECTIONS OFFICER, IAN DAVIS | § | |
| CORRECTIONS OFFICER, KIMBERLY D. | § | |
| THOMPSON | § | |
| CORRECTIONS OFFICER, OBADINA S. | § | |
| OMAKA | § | |

CORRECTIONS OFFICER, OLADIPO OLUFEMI §
DIRECTOR OF CLASSIFICATION, MARK      §
SANDLIN                               §
DOCTOR, GARY WRIGHT                   §
GRIEVANCE INVESTIGATOR, TAMMY L.      §
RAINEY                                §
GRIEVANCE INVESTIGATOR, BRITTANI F.   §
RODRIGUEZ                             §
GRIEVANCE INVESTIGATOR, MELISSA B. VIXHA
GRIEVANCE INVESTIGATOR, MONTE P. NABORS
GRIEVANCE INVESTIGATOR, DEBBIE L. POOLE
GRIEVANCE INVESTIGATOR, D. RODEN      §
GRIEVANCE INVESTIGATOR, J. PETERSON  §
GRIEVANCE INVESTIGATOR, T. VASSILICO §
GRIEVANCE INVESTIGATOR, KATHY GREY       §
GRIEVANCE INVESTIGATOR, KHARI MOTT       §
GRIEVANCE INVESTIGATOR, ANDREY VASLJEV  §
GRIEVANCE INVESTIGATOR, DAWN M. HUFFMAN §
GRIEVANCE INVESTIGATOR, RACHEL R. ROWLAND
GRIEVANCE INVESTIGATOR, B. BARNETT       §
GRIEVANCE INVESTIGATOR, M. BLALOCK       §
GRIEVANCE INVESTIGATOR, M. LEWANDOWSKI §
GRIEVANCE INVESTIGATOR, I-0352           §
GRIEVANCE INVESTIGATOR, B. HOWARD        §
GRIEVANCE INVESTIGATOR, J. SMITH         §
GRIEVANCE INVESTIGATOR, C. MCKELLEN      §
GRIEVANCE INVESTIGATOR, TIMOTHY C. JONES §
GRIEVANCE INVESTIGATOR, S. GURROLA       §
GRIEVANCE INVESTIGATOR, C. MARTINEZ      §
GRIEVANCE INVESTIGATOR, K. WARD          §
GRIEVANCE INVESTIGATOR, JESSICA RILEY    §
GRIEVANCE INVESTIGATOR, V. BARROW        §
GRIEVANCE INVESTIGATOR, I-0964 OIG       §
GRIEVANCE INVESTIGATOR, M. TRAVIS        §
GRIEVANCE INVESTIGATOR, H. YARBROUGH     §
GRIEVANCE INVESTIGATOR, V. BARNES        §
GRIEVANCE INVESTIGATOR, B. FERGUSON      §
GRIEVANCE INVESTIGATOR, H.M. PEDERSON    §
GRIEVANCE INVESTIGATOR, JESSICA BACK     §
GRIEVANCE SUPERVISOR, MARGARET M. PRICE §
LIEUTENANT, GWENDOLYN R. FULLER          §
LIEUTENANT, SHERRELL D. MCCOY            §
LIEUTENANT, SHAYNA M. MCARTHUR           §
LIEUTENANT, ERIK. L. BRANNAN             §
LIEUTENANT, VERNON L. ALLEN              §
LIEUTENANT, DEREK W. LIGHT               §

LIEUTENANT (NOW SERGEANT), ELDRICK §
BIRDOW §
MAILROOM SUPERVISOR, AMY E. MCCALISTER §
MAJOR, TODD R. FUNAI §
MAJOR, TIMOTHY FITZPATRICK §
MAJOR, SEAN F. MARSHALL §
MAJOR, GUILLERMO M. DELAROSA §
MHPM, DAVID STEBBINS, MD §
PROVIDER, ROSEMARY OFILI §
SARGENT, COLLINS K. SINTIM §
SARGENT, CARLOS U. DURAN §
SARGENT, PRINCE C. HALL §
SERGEANT, ADESANNYA S. ADENIRAN §
SERGEANT, CODY J. GARNER §    SERGEANT,    ABBIE    G,
ANDREWS                §
SERGEANT, DANIEL R. JETT §
SERGEANT, CHASE R. JOHNSON §
SERGEANT, FRANCIS KYEI §
SERGEANT, KAMRY D. KINDER §
SERGEANT, RAHNESIA L. MULLINS §
SERGEANT, SERGEANT MABLE G. SWEAT §
SERGEANT, FRANKLIN G. NZERIBE §
SERGEANT, SERGEANT JOHN H, HOLMES, III §
FORMER TEXAS BOARD OF CRIMINAL §
JUSTICE CHAIRMAN, §
DALE WAINWRIGHT §
TEXAS BOARD OF CRIMINAL JUSTICE §
CHAIRMAN, §
PATRICK O'DANIEL §
TEXAS DEPARTMENT OF CRIMINAL JUSTICE, §
EXECUTIVE §
DIRECTOR, BRIAN COLLIER §
WARDEN, DEBORAH G. COCKRELL §
WARDEN, PENNIE R. KEMPT §
WARDEN (NOW ASSISTANT WARDEN), §
CHARLES O. §
MEADOR, WARDEN (NOW DIRECTOR II),    § CAROL
E. MONROE, JR.                §
                    DEFENDANTS.

## PLAINTIFF'S OPPOSITION TO TDCJ'S, MAJOR ENGE AND OFFICER NEAL'S MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT

## PARTIES TO THE SUIT

The incident(s) that formed the grounds for this action took place while Plaintiff was an offender, assigned to the Michael Unit, his current address is as follows:

PLAINTIFF:

> Jamon Hestand TDCJ-ID #1343536
> Michael Unit 2664 FM 2054
> Tennessee Colony, TX 75886

DEFENDANTS:

| | | | |
|---|---|---|---|
| Captain | Jamadre Enge | 2664 FM 2054 | |
| Captain | Olin C. Statham, Jr. | Michael Unit 2664 FM 2054 | Huntsville, Texas 77320 |
| Captain | Jason M. Gould | Michael Unit 2664 FM 2054 | Huntsville, Texas 77320 |
| Chaplain | Samuel C. Arcipreste | Michael Unit 2664 FM 2054 | Huntsville, Texas 77320 |
| Chaplain | Randall S. Clarke | Michael Unit 2664 FM 2054 | Huntsville, Texas 77320 |
| Chaplain | Thomas R. Taylor | Michael Unit 2664 FM 2054 | Huntsville, Texas 77320 |
| Corrections Institution Division Director | Bobby Lumpkin | Texas Department of Criminal Justice Correctional Institutions Division PO Box 9 | Huntsville, TX 9 77342-0099 |

| | | | |
|---|---|---|---|
| Former Corrections Institution Division Director | Lorie Davis | Texas Department of Criminal Justice Correctional Institutions Division PO Box 99 | Huntsville, TX 77342-0099 |
| Corrections Officer | Victor V. Afun | Michael Unit 2664 FM 2054 | Huntsville, Texas 77320 |
| Corrections Officer | Barbara Neal | Michael Unit 2664 FM 2054 | Huntsville, Texas 77320 |
| Corrections Officer | Aguilar | Michael Unit 2664 FM 2054 | Huntsville, Texas 77320 |
| Corrections Officer | Michael O. Casteel, | Michael Unit 2664 FM 2054 | Huntsville, Texas 77320 |
| Corrections Officer | Lourens A. Jackson | Michael Unit 2664 FM 2054 | Huntsville, Texas 77320 |
| Corrections Officer | Ian Davis | Michael Unit 2664 FM 2054 | Huntsville, Texas 77320 |
| Corrections Officer | Kimberly D. Thompson | Michael Unit 2664 FM 2054 | Huntsville, Texas 77320 |
| Corrections Officer | Obadina S. Omaka | Michael Unit 2664 FM 2054 | Huntsville, Texas 77320 |
| Corrections Officer | Oladipo Olufemi | | |
| Director of Classification | Mark Sandlin | Texas Department of Criminal Justice PO Box 99 | Huntsville, Texas 77320 |
| Doctor | Gary Wright | Michael Unit 2664 FM 2054 | Huntsville, Texas 77320 |
| Grievance Investigator | Tammy L. Rainey | Michael Unit 2664 FM 2054 | Huntsville, Texas 77320 |
| Grievance Investigator | Brittani F. Rodriguez | Michael Unit 2664 FM 2054 | Huntsville, Texas 77320 |
| Grievance Investigator | Melissa B. Vixha | Michael Unit 2664 FM 2054 | Huntsville, Texas 77320 |
| Grievance Investigator | Monte P. Nabors | Michael Unit 2664 FM 2054 | Huntsville, Texas 77320 |

| | | | |
|---|---|---|---|
| Grievance Investigator | Debbie L. Poole | Michael Unit 2664 FM 2054 | Huntsville, Texas 77320 |
| Grievance Investigator | D. Roden | Michael Unit 2664 FM 2054 | Huntsville, Texas 77320 |
| Grievance Investigator | J. Peterson | Michael Unit 2664 FM 2054 | Huntsville, Texas 77320 |
| Grievance Investigator | T. Vassilico | Michael Unit 2664 FM 2054 | Huntsville, Texas 77320 |
| Grievance Investigator | Kathy Grey | Michael Unit 2664 FM 2054 | Huntsville, Texas 77320 |
| Grievance Investigator | Khari Mott | Michael Unit 2664 FM 2054 | Huntsville, Texas 77320 |
| Grievance Investigator | Andrey Vasljev | Michael Unit 2664 FM 2054 | Huntsville, Texas 77320 |
| Grievance Investigator | Dawn M. Huffman | Michael Unit 2664 FM 2054 | Huntsville, Texas 77320 |
| Grievance Investigator | Rachel R. Rowland | Michael Unit 2664 FM 2054 | Huntsville, Texas 77320 |
| Grievance Investigator | B. Barnett | Michael Unit 2664 FM 2054 | Huntsville, Texas 77320 |
| Grievance Investigator | M. Blalock | Michael Unit 2664 FM 2054 | Huntsville, Texas 77320 |
| Grievance Investigator | M. Lewandowski | Michael Unit 2664 FM 2054 | Huntsville, Texas 77320 |
| Grievance Investigator | I-0352 | Michael Unit 2664 FM 2054 | Huntsville, Texas 77320 |
| Grievance Investigator | B. Howard | Michael Unit 2664 FM 2054 | Huntsville, Texas 77320 |
| Grievance Investigator | J. Smith | | |
| Grievance Investigator | C. McKellen | Michael Unit 2664 FM 2054 | Huntsville, Texas 77320 |
| Grievance Investigator | Timothy C. Jones | Michael Unit 2664 FM 2054 | Huntsville, Texas 77320 |
| Grievance Investigator | S. Gurrola | Michael Unit 2664 FM 2054 | Huntsville, Texas 77320 |
| Grievance Investigator | C. Martinez | Michael Unit 2664 FM 2054 | Huntsville, Texas 77320 |
| Grievance Investigator | K. Ward | Michael Unit 2664 FM 2054 | Huntsville, Texas 77320 |

| | | | |
|---|---|---|---|
| Grievance Investigator | Jessica Riley | Michael Unit 2664 FM 2054 | Huntsville, Texas 77320 |
| Grievance Investigator | V. Barrow | Michael Unit 2664 FM 2054 | Huntsville, Texas 77320 |
| Grievance Investigator | I-0964 OIG | Michael Unit 2664 FM 2054 | Huntsville, Texas 77320 |
| Grievance Investigator | M. Travis | Michael Unit 2664 FM 2054 | Huntsville, Texas 77320 |
| Grievance Investigator | H. Yarbrough | Michael Unit 2664 FM 2054 | Huntsville, Texas 77320 |
| Grievance Investigator | V. Barnes | Michael Unit 2664 FM 2054 | Huntsville, Texas 77320 |
| Grievance Investigator | B. Ferguson | Michael Unit 2664 FM 2054 | Huntsville, Texas 77320 |
| Grievance Investigator | H.M. Pederson | Michael Unit 2664 FM 2054 | Huntsville, Texas 77320 |
| Grievance Investigator | Jessica Back | Michael Unit 2664 FM 2054 | Huntsville, Texas 77320 |
| Grievance Supervisor | Margaret M. Price | Michael Unit 2664 FM 2054 | Huntsville, Texas 77320 |
| Lieutenant | Gwendolyn R. Fuller | Michael Unit 2664 FM 2054 | Huntsville, Texas 77320 |
| Lieutenant | Sherrell D. McCoy | Michael Unit 2664 FM 2054 | Huntsville, Texas 77320 |
| Lieutenant | Shayna M. McArthur | Michael Unit 2664 FM 2054 | Huntsville, Texas 77320 |
| Lieutenant | Erik. L. Brannan | Michael Unit 2664 FM 2054 | Huntsville, Texas 77320 |
| Lieutenant | Vernon L. Allen | Michael Unit 2664 FM 2054 | Huntsville, Texas 77320 |
| Lieutenant | Derek W. Light | Michael Unit 2664 FM 2054 | Huntsville, Texas 77320 |
| Lieutenant (Now Sergeant) | Eldrick Birdow | Michael Unit 2664 FM 2054 | Huntsville, Texas 77320 |

| | | | |
|---|---|---|---|
| Mailroom Supervisor | Amy E. McCalister | | Huntsville, Texas 77320 |
| Major | Todd R. Funai | Michael Unit 2664 FM 2054 | Huntsville, Texas 77320 |
| Major | Timothy Fitzpatrick | Michael Unit 2664 FM 2054 | Huntsville, Texas 77320 |
| Major | Sean F. Marshall | Michael Unit 2664 FM 2054 | Huntsville, Texas 77320 |
| Major | Guillermo M. Delarosa | Michael Unit 2664 FM 2054 | Huntsville, Texas 77320 |
| MHPM | David Stebbins, MD | Michael Unit 2664 FM 2054 | Huntsville, Texas 77320 |
| Provider | Rosemary Ofili | Michael Unit 2664 FM 2054 | Huntsville, Texas 77320 |
| Sargent | Collins K. Sintim | Michael Unit 2664 FM 2054 | Huntsville, Texas 77320 |
| Sargent | Carlos U. Duran | Michael Unit 2664 FM 2054 | Huntsville, Texas 77320 |
| Sargent | Prince C. Hall | Michael Unit 2664 FM 2054 | Huntsville, Texas 77320 |
| Sergeant | Adesannya S. Adeniran | Michael Unit 2664 FM 2054 | Huntsville, Texas 77320 |
| Sergeant | Cody J. Garner | Michael Unit 2664 FM 2054 | Huntsville, Texas 77320 |
| Sergeant | Abbie G, Andrews | Michael Unit 2664 FM 2054 | Huntsville, Texas 77320 |
| Sergeant | Daniel R. Jett | Michael Unit 2664 FM 2054 | Huntsville, Texas 77320 |
| Sergeant | Chase R. Johnson | Michael Unit 2664 FM 2054 | Huntsville, Texas 77320 |
| Sergeant | Francis Kyei | Michael Unit 2664 FM 2054 | Huntsville, Texas 77320 |
| Sergeant | Kamry D. Kinder | Michael Unit 2664 FM 2054 | Huntsville, Texas 77320 |
| Sergeant | Rahnesia L. Mullins | Michael Unit 2664 FM 2054 | Huntsville, Texas 77320 |
| Sergeant | Mable G. Sweat | Michael Unit 2664 FM 2054 | Huntsville, Texas 77320 |
| Sergeant | Franklin G. Nzeribe | Michael Unit 2664 FM 2054 | Huntsville, Texas 77320 |
| Sergeant | John H, Holmes, III | Michael Unit 2664 FM 2054 | Huntsville, Texas 77320 |
| Former Texas Board of Criminal Justice Chairman | Dale Wainwright | Michael Unit 2664 FM 2054 | Huntsville, Texas 77320 |
| Criminal Justice | | Texas Board of PO Box 13084 | Austin, Texas 78711 |

| | | | |
|---|---|---|---|
| Texas Board of Criminal Justice Chairman | Patrick O'Daniel | Texas Board of Criminal Justice PO Box 13084 | Austin, Texas 78711 |
| Texas Department of Criminal Justice, Executive Director | Brian Collier | 209 West 14th Street, 5th Floor Price Daniel Building | Austin, TX 78701 |
| Warden | Deborah G. Cockrell | Michael Unit 2664 FM 2054 | Huntsville, Texas 77320 |
| Warden | Pennie R. Kempt | Michael Unit 2664 FM 2054 | Huntsville, Texas 77320 |
| Warden (Now Assistant Warden) | Charles O. Meador | Michael Unit 2664 FM 2054 | Huntsville, Texas 77320 |
| Warden (Now Director II) | Carol E. Monroe, Jr. | Michael Unit 2664 FM 2054 | Huntsville, Texas 77320 |

# FACTS

## FEBRUARY 13, 2018 USE OF FORCE AGAINST PLAINTIFF

On February 13, 2018, before lunch time, Captain Enge and Officer B. Neal went into

Plaintiff's cell and proceeded to throw Plaintiff's personal items from one side of the cell to the

other. They placed some property in a large bedding sheet and came out of the cell. Captain Enge

told Plaintiff he was taking the property to investigate whether a fire had been set by Plaintiff.

Plaintiff made no admission of setting such a fire; and Defendant Enge did not offer evidence of

Plaintiff's setting a fire at the time of the threat. When Defendant Enge took the property,

neither he nor any other TDCJ employee, gave Plaintiff any property confiscation papers for the

property that had been taken from Plaintiff's cell.

Plaintiff was also advised that after this theft of property, Captain Eng instructed other officers

on the cell block not to feed Plaintiff that day; and they did not.

At approximately 2:30 p.m. on February 13, 2018, Captain Enge, along with a 5-Man Team

entered Plaintiff's cell at 12 Building A-Pod-78 Cell. Captain Enge sprayed Plaintiff with

chemical agents in rapid succession and with such force that Plaintiff was unable to stand, breath,

follow instructions; and was severely injured as a result. This made it impossible for Plaintiff to

hear or comprehend the orders he was given.

This 5- Man team included Officer Aguilar, Officer Castile, Officer Lourens A. Jackson,

Officer Davis, and Sergeant Garner.  The 5-man team was also accompanied by Officer

Kimberly Thompson who operated the video recording of the use of force.  Nurse Robert Gage

was also present throughout much of the assault. The team ran in and slammed Plaintiff into the

wall and floor with such force that Plaintiff's ribs were broken, his back and neck severely injured,

Plaintiff's Opposition to Defendants TDCJ, Jamadre Enge and Neal's Motion to Dismiss
10

he suffered broken blood vessels in his eye, a head concussion, a large open wound to the side and back of his head, a broken leg, and fractured knee.

Immediately upon entry into Plaintiff's cell, Defendants named in this incident opened Plaintiff's door, they slammed Plaintiff to the ground face down and immediately was attacked by the first man in the cell, whom Plaintiff identifies as Defendant Jamadre Eng.  A second Defendant crammed his fingers into both of Plaintiff's eyes and causing the blood vessels in his eyes to burst.  Plaintiff suffered extreme pain.  At that point Plaintiff was completely blinded. One of identified members of the 5-man team or Captain Jamadre Eng himself proceeded to slam the right side of Plaintiff's head into the steel toilet/sink repeatedly, which caused blood to flow from Plaintiff's head and caused severe pain.  At the same time, someone else behind Plaintiff twisted his right leg until it was injured.  At the same time, yet another of the named TDCJ officers twisted Plaintiff's thumb as if to try to break them both off.  Defendants injured Plaintiff's right hand by twisting and bending it.  Plaintiffs endured punches, bruises, and kicks about the torso.

During this same assault, one of the named members of the 5-man team proceeded to punch Plaintiff repeatedly in the back of his head with his fist, smashing his forehead into the concrete floor repeatedly. All the while, yet another of the named TDCJ officers repeatedly shouted for Plaintiff to "Stop resisting!" This in spite of the fact that Plaintiff was physically unable to resist or move on his own even if he tried die to the number of people pulling his extremities in opposite directions; and beating him about the head.

Once the 5 named Defendants along Captain Jamadre Eng stopped physically assaulting

Plaintiff: they forced him from his cell.  Plaintiff's right knee gave out from his injury as he tried to walk down the stairs.  Thus, the officers had to carry Plaintiff out of the area by stretcher.

The nurse who was present throughout, evaluated Plaintiff and released him to security. Plaintiff was dropped onto the floor and thereby furthering injuries, especially to his back.

Another of the named defendants (Plaintiff cannot specifically identify which because his back was turned to the officers at the time; but he is certain of the identities of those officers who were present in his cell); slammed plaintiffs head into the floor and the wall several times his head was also slammed into a steel toilet sink at the right side of his head causing bleeding and serious pain a third of the named and back two officers standing behind plaintiff smashed him in the back of the head forcing his forehead concrete floor the others brutality abused and assaulted him from the front plaintiff.  Plaintiff prayed for his life to be spared the entire time.

Plaintiff was limp and did not fight back however the officers in the team inside of the sale continue to yell out loud for Plaintiff to "Stop resisting!" Plaintiff contends that at no time did he ever resist plaintiff was so brutally beaten and battered that he was carried down the stairs because he was unable to walk due to the damage to his knee his inability to see and the injury to his head which caused severe disorientation ultimately plaintiff was placed on a stretcher and nurse Robert Gage was allowed to evaluate him however nurse Gage merely asked plaintiff whether he had in fact suffered any injuries and plaintiff described his injuries in detail.

Defendant, Nurse Robert Gage however, ignored plaintiff and released Plaintiff back to the dorm area rather than ordering Plaintiff to be taken to the Infirmary or to ship him to proper medical treatment at a hospital.  Instead, Plaintiff was thrown into a cell and placed on suicide watch.  Plaintiff remained blinded by the chemical agents and in serious pain for several days thereafter.

Approximately 10 hours after this use of force plaintiff was finally taken to medical around midnight on a stretcher. Plaintiff was able to open his eyes slightly however his blood vessels were busted. Plaintiff's right hand was swollen. Plaintiff's ribs and right knee were broken.

Plaintiff was not able to use his hand or his leg at all. Plaintiff suffered a bulging eardrum. Plaintiff's head was swollen on the front and the right side along with the back. The back of his head and right side of his skull were still bleeding. Plaintiff's pulse was irregular. Plaintiff's eyes were blackened and swollen. Plaintiff shook about his body uncontrollably. Plaintiff was disoriented. Plaintiff struggled to breathe. Ultimately, he was transported to the Palestine Regional Hospital where a cat scan was performed. Plaintiff was not given anything for pain for the broken ribs knee hand or back plaintiff was shipped back to his unit on a regular transport van in serious pain with severe injuries.

Once plaintiff had returned to the Michaels unit which was approximately 16 hours after the original assault, he was given ibuprofen for pain plaintiff was given crutches and an X Ray were ordered. The X Ray revealed broken ribs the X Ray revealed that plaintiff's knee which had previously been injured was now reinjured plaintiff continues to suffer from the lungs puncturing his ribs even to date as he breathes. Plaintiff continues to hear ringing in a piercing sound in his ears which never or seldom ceases. Plaintiff suffers pain along the base of his spine.

Plaintiff could not sit for long; he could not stand for long; he could not lay or sleep for any length of time due to the back head and ear pain plaintive suffers from severe mental illness and his constant pain and lack of treatment has worsened his mental state. Plaintiff is trapped in a solitaire confinement on a wing where there are constantly fires being set by the offenders. All around Plaintiff, inmates cry out in pain or dementia on an hourly basis and this level of torture that plaintiff suffered at the hands of the TDCJ staff in February 2018 and continues to suffer

today is tantamount to cruel and unusual punishment in violation of his constitutional rights plaintiff has filed numerous grievances about the February use of force the denial of medical treatment and the continued retaliation to no avail.

### MARCH 9, 2020 USE OF FORCE AGAINST PLAINTIFF

Plaintiff was again assaulted by unit staff and denied medical care for his injuries.  Plaintiff was sprayed excessively with chemical agents in his eyes; his arms were slammed in the food tray slot; an officer pressed his foot into Plaintiff's neck and throat.  Yet another officer punched Plaintiff in his left ear, eye, and forehead.  Plaintiff's knee was also damaged in this melee.  Plaintiff cannot specify which officer committed which act against him, as his time was spent trying to avoid further eye injuries.

This use of force was not captured on video because Lt. Brannon ordered them turned off or away; and further told Plaintiff, "This is what you get for filing lawsuits!"

Plaintiff was given no medical attention after this use of excessive force.  Plaintiff was not decontaminated and continued to suffer.  Plaintiffs' grievances regarding this use of force were ignored and/or lost to destroyed.  Plaintiff alleges that this is tantamount to an obstruction of justice.

### APRIL 5, 2020 USE OF FORCE AGAINST PLAINTIFF

On April 5, 2020, Plaintiff was subjected to a use of force assault by TDCJ officers Lt. Shayna M. McArthur, Sgt. Sgt. Franlin G. Nzerhe, Sgt. Whittlesey, Ms. Mengel. Slightly before 6 pm on this date, another inmate kept knocking out the cell power and lights for fun. As a result, several other inmates lit small fires in the hallway outside of the cells. As the Sgt. Nzeribe was putting out the fire with a large water hose, he and his crew caused Plaintiff's property in his cell to be

drenched.  Plaintiff, who had not been involved in the bad acts was irritated.  This led to an exchange of words by the officers; and a use of excessive force against Plaintiff by a 5-man team.

The officers first told Plaintiff that he was being taken to another cell and then they would bring his property. Plaintiff was taken out of the soggy, now filthy cell and placed on the floor, in the water. Then the officers went into Plaintiff's cell, packed his property, and carried it out.  Plaintiff is required to walk on a cane and cannot transport his own property while injured, and while walking on a slippery floor under restraint.  Plaintiff was instructed to follow officers back into his cell--about three feet into the cell, far enough into the cell that the cameraman CO. Olubunmi Oseye could deliberately not see; Plaintiff was attacked from all sides by the officers. Both the Lt. and Sgt. who were on site, allowed this assault to occur. Plaintiff was kneed and kicked repeatedly in the head and back, punched all over the head and back, his right foot/ankle was stomped into the concrete, and he was stomped, his head was continuously banged into the concrete, slapped in the face, kicked, and beat all over his body.

Plaintiff was viciously assaulted with blood dripping down his face, and he begged the officers to stop. Plaintiff was seriously hurt. Plaintiff was given x-rays for his back, right shoulder, and his right food/ankle. Plaintiff's head was wrapped, but not checked properly. Plaintiff was beaten without mercy.

Following this attack on Plaintiff, his complaint was not given an investigation in violation of his due process rights.  Plaintiff alleges that Warden Pennie Kempt in conjunction with the Office of the Attorney General refused to find any fault by the officers in spite of this inmate's severe and ongoing injuries.  Plaintiff further alleges that he was denied proper medical care following this assault.

## MALICIOUS PROSECUTION OF PLAINTIFF FOR AN INCIDENT ALLEGED TO HAVE OCCURRED NOVEMBER 5, 2018

34.   On May 27, 2020, after having filed his own excessive force lawsuit against prison officials; Plaintiff was indicted for the offense of causing bodily serious injury to Officer Quana Goodman, by striking Officer Goodman with a hot liquid in the head and/or face. See Plaintiff's Exhibit A.  This flows from a false allegation that Plaintiff dashed an officer in the eye with a cup of hot water while inside of his cell through a food tray door; while Plaintiff had no ability to heat his water and his tray slot would not have afforded him the opportunity to reach anyone's eye. Plaintiff was so brutally beaten that 21 staffers had to tend to him. Plaintiff filed grievance numbers, 2019084077, 2019087915, 2019129033, 2019106382, 2019114878, and 2019117371, among others. No disciplinary action was taken against Plaintiff, until Plaintiff filed this present suit.

35.   Plaintiff would show this is an element of retaliation and malicious prosecution against

Plaintiff. Plaintiff would show that Officer Q. Goodman, and other officers, came into Plaintiff's cell and told Plaintiff that the "[A]█ beating' that he will receive today, is because [Plaintiff] had the nerve to sue Texas Department of Criminal Justice."

36.   The officer even referenced earlier beatings which were levied upon Plaintiff, in Q.

Goodman's efforts to scare Plaintiff. Thereafter, the officers began to beat and punch Plaintiff. Plaintiff would show that the filing of this case is a malicious prosecution against him in retaliation for his filing this lawsuit.   Plaintiff will further show that the timing of the present indictment, four months after this suit was filed; was also designed to interfere with Plaintiff's Parole eligibility.  Plaintiff came into Parole Review, just before he was assaulted.  The open and pending charges keep him in a limbo state with the Parole Board and not able to be considered for early release.

37.    Plaintiff was assaulted by the officers on November 5, 2018 for no reason, with provocation.  No action was taken against him.  Plaintiff filed his lawsuit two full years after his February assault, and now TDCJ officials seek to give him a free world charge in retaliation.

### DENIAL OF PLAINTIFF'S DUE PROCESS RIGHTS BY REFUSING HIM ACCESS TO THE PRISON GRIEVANCE PROCESS AND TO LEGAL RESOURCES:

38.    On April 13, 2018, Plaintiff received notice that his grievances would be responded to once they had been fully reviewed. Prior to this date, Supervisor Margret M. Price, her subordinates Tommy L. Rainey, Brittani F. Rodriguez, Melissa B. Vixtha and Monte P. Nabors had not responded assisted Hestand. They had refused to accept his grievances often not pick them up, steal grievances, damage grievances, return them untouched, or they would simply disappear.

39.    Plaintiff has been on 18 units at TDCJ during his period of incarceration an in every instance his grievances have been refused and he has continuously been denied the grievance process. Either his grievances were not picked up at all, they are stolen or concealed by TDCJ staff or they are damaged and torn or water stained when returned to plaintiff or their returned untouched with no response some of plaintiff's grievances have been returned with responses that indicate no violations have been determined or to suggest that the TDCJ staff has not violated any policies or procedures in any instances such denials Evans process is tantamount to conspiracy to that serves to deny plaintiff of his due process rights.

40.    Plaintiff was denied his due process rights by refusing to allow Plaintiff access to the Prison Grievance Process, the law library and other required services that go along with the traditional role of access to courts. Plaintiff was told by the Warden and law library officer that the law library only had certain books available to Plaintiff, based upon his inability to go to the law library, due to his status. Plaintiff would show that this inability to go to the law library and TDCJ's inability

to deliver documents caused Plaintiff not to be able to research his position and to cease the wrongful treatment of Plaintiff sooner.

41.   In an attempt to seek redress for his February 2018 assault and major injuries; Plaintiff filed more than 122 grievances.  Plaintiff has filed many more; yet these are the only grievances which were returned to him.  In each of these, Plaintiff is denied any remedy.  Most go unanswered or respond that no wrongdoing can be found.  Plaintiff expects to tender his grievance files and logs in his initial disclosures rather than to attach to this complaint.

42.   In 2019, Plaintiff filed 31- Step 1 and 31- Step 2 Grievances to complain of his continued lack of medical care, tampering with his food, and poor conditions of confinement.  In 2020, Plaintiff has filed more than 15- Step 1 and 15- Step 2 Grievances seeking treatment above and beyond mere pain medication, to treat his injuries that continued from his February 2018 attack; and now from his March and April; 2020 assaults against him.  Plaintiff's grievances and I-60s have begun to promise medical visits.  However, over the past year, more of his requests for medical chain have either been denied; or Plaintiff has learned that unit officials have forged documents claiming that he continues to deny medical transport or refuses medical passes.

43.   Plaintiff alleges that Defendant Pam Pace is violating his protected conduct of filing grievances and conspiring against his rights in order to obstruct justice.  Plaintiff alleges that each and every one of the above-named grievance officers on the Michael's unit, as well as those in the Central Grievance office, who have signed his grievances; have conspired to continuously and systematically ignore or deny his access to the Grievance process.  Plaintiff is forced to file Grievance after grievance, and grievances about his failed responses to grievances and lost grievances.

## ARGUMENT

**I.      Plaintiff had good cause not to have effectuated service on the 3 named Defendants until 120 days after filing**

  **Plaintiff had good cause not to have effectuated service on the 3 named Defendants until 120 days after filing; and further good cause for not having completed service on the newly named 88 Defendants.**

  Three Defendants moved to dismiss the complaint and allegations against them in the present motion.  However, in Plaintiff's Amended Complaint, Plaintiff named 88 additional Defendants who committed acts and omissions in violation of his constitutional rights.  Plaintiff continues to-date to suffer retaliation and additional acts of violence that are too numerous to keep up with.

  Even were the Court to dismiss Plaintiff's claims against the initial three Defendants, the remaining claims raise legitimate fact issues worthy of redress in the Court.  The time for service on those Defendants has not lapsed.

  The Federal Rules of Civil Procedure require a summons and complaint to be served either in accordance with the law of the state where the district court is located or by personal service via an authorized process server. Fed. R. Civ. P. 4(c), (e). Under Texas law, service may only be made by personal delivery or certified mail, return receipt requested. Tex. R. Civ. P. 106. Both the Federal and Texas Rules of Civil Procedure expressly forbid a plaintiff from personally effectuating service.  Action will be dismissed without prejudice unless plaintiff shows good cause for failure to complete service if plaintiff fails to serve defendant properly within 120 days of filing complaint, either upon motion of defendant or sua sponte by court with notice to plaintiff. Fed.Rules Civ.Proc.Rule 4(j), 28 U.S.C.A.

  Plaintiff filed his complaint at the start of the COVID-19 Pandemic on February 13, 2020. Immediately thereafter, Courts, prisons, law offices and process sever; all business operations shut down.  Plaintiff was challenged to find anyone willing to serve process in the prisons where the
Plaintiff's Opposition to Defendants TDCJ, Jamadre Enge and Neal's Motion to Dismiss
19

death count was greater than that of the outside world.  Additionally, by that time, Courts and the State of Texas had not issued emergency orders governing court operations.  Litigants and their agents were operating by the seat of their pants to keep actions moving forward.

The three Defendants complain that Plaintiff failed to use a person authorized to effect service; and that the return does not state his credentials.  There is no place on the return for information other than the name and address of the process server.  However, Plaintiff relied on the services of a person duly authorized under the JBCC to serve process during emergency management conditions.  ***See Plaintiff's Exhibit A.***

On January 15, 2021, Plaintiff amended his complaint to include additional claims against newly discovered defendants based on Step 1 and Step 2 grievances that Plaintiff has recovered from property that was either taken from his cell or from grievances which were returned to him late.  Many of these allegations of due process violations and the two new excessive force attacks occurred since the filing of this suit and since the 3 original Defendants filed their motion to dismiss.

In their motion for leave to File their Out of time Motion to Dismiss Plaintiff's Amended Complaint; Defendants advise that their error to timely respond was not made for "contumacious or dilatory purposes but was simply unintentional and the result of having an unmanageable amount of work to maintain at the moment; and that it was 'excusable neglect'.  The Court considered this excuse and granted their motion.  The Defendants are represented by a government entity with dozens of named attorneys, paralegals, and support staff, along with a repository of form motions at their disposal.  Plaintiff on the other hand does not allege neglect excusable or otherwise.  Plaintiff is represented by a solo practitioner who is challenged to defend the rights of a suffering indigent Plaintiff whose communication s are being thwarted; his liberty interests are

Plaintiff's Opposition to Defendants TDCJ, Jamadre Enge and Neal's Motion to Dismiss

being further infringed by staff and corrections officers through their retaliation.  Any delay or lack of service by Plaintiff has been primarily because of his day-to-day survival challenges.  His food is being tampered with; he is subjected to mental torture by being housed on a mental health wing with offenders who cause fires, flood their cells, and scream out in agony each day.  Plaintiff has not always been able to assist counsel in succinctly presenting his claims and allegations. Plaintiff moved for extension of time to respond three times not to stall and delay but due to Plaintiff's living conditions, acts of retaliation against him for having filed suit in the first place; and due to the TDCJ grievance process requiring Step 1 and Step 2 grievances being filed and returned before one may seek redress in the Courts.

Any delay in service of process on additional defendants does not serv any undue hardship to the named defendants.  Nor does it serve any surprise or hardship upon the newly named defendants.  To the extent that Plaintiff's causes of action against each of the assault claims have newly accrued; suits against them could have been filed as late as March and April of 2021.  In fact, Plaintiff continues to undergo due process violations.  Plaintiff was again recently assaulted on March 31, 2021

Further, COVID-19 restrictions and panic were considered when attempting to locate process servers who were willing to serve defendants in a Texas prison where the disease affected people at rates higher than that of those in the general population.  Plaintiff filed this complaint on February 13, 2020.  Then COVID-19 affected all business and Court operations.  Most of the State of Texas and all of the City of Houston (where Plaintiff's counsel's office is located were closed for fear of infection and death).  In fact, Plaintiff's counsel did in fact fall ill and was thus unable to function for extended periods of time.  The Court took this into consideration when granting two motions for leave to respond to Defendant's first motion to dismiss.

The newly identified Defendants named in Plaintiff's Amended Complaint are too numerous for Plaintiff, an indigent Texas prisoner to bear the costs.  Plaintiff's counsel has filed contemporaneous with this motion, a motion to extend time to serve these defendants based on the extraordinary cost of over $9,000.00 for personal service of process.  This poses an extreme hardship on Plaintiff and counsel.  Plaintiff is not able to assist in any way financially in the costs of litigation.

Plaintiff amended his Complaint on January 15, 2021.  Plaintiff's counsel has secured funds to cover costs to affect service on some; but not all of the remaining defendants.  Any motion for extension is to allow time beyond the present 83 days from filing to serve.

Plaointiff filed his complaint at the start of the COVID-19 Pandemic on February 13, 2020. Immediately thereafter, Courts, prisons, law offices and process sever; all business operations shut down.  Plaintiff was challenged to find anyone willing to serve process in the prisons where the death count was greater than that of the outside world.  Additionally, by that time, Courts and the State of Texas had not issued emergency orders governing court operations.  Litigants and their agents were operating by the seat of their pants to keep actions moving forward.

Although Hestand attempted to serve Major Enge and Officer Neal by certified mail, the certified mail receipts attached to the returns of service were signed by a Macie Weir, not Defendants. Dkt. Nos. 9, 10. As Texas law requires a return of service to include a certified mail receipt signed by the addressee when service is affected by certified mail, none of the defendants were properly served by certified mail. *See* Tex. R. Civ. P. 107; *see also Ramirez v. Consol. HGM Corp.*, 124 S.W.3d 914, 916 (Tex.App.—Amarillo 2004, no pet.).

Moreover, the validity of service depends on whether person that sent the summons via certified mail was authorized to serve process under Texas Rule 103. Texas Rule 103 states that service may

only be made by persons authorized by law or court order who are not "a party to or interested in the outcome of a suit." Tex. R. Civ. P. 103. Rule 103 also provides: "Service by registered or certified mail and citation by publication must, if requested, be made by the clerk of the court in which the case is pending." *Id*. Given this, many courts, including this one, have concluded that this language allows only the clerk of court and no other persons to serve by certified mail. *See, e.g., Davis v. G.E. Money Bank*, 2:10-CV-473-TJW-CE, 2011 WL 13323924, at *1 (E.D.

Tex. Aug. 4, 2011) ("only the clerk of the court may serve process [via certified mail, return receipt requested]"); *Dickey v. State Farm Bank*, F.S.B., CV H-18-770, 2018 WL 2454159, at *6 (S.D. Tex. May 10, 2018) ("Even though Texas permits service of process via certified mail, return receipt requested, only the clerk of the court may serve process in this manner").

The returns of service filed with the court do not state that Hestand's process server, Everett Von Moore, is a private process server. See Dkt. No. 9, 10. They also do not demonstrate that Von Moore is authorized by law or court to serve the defendants. Because Hestand has failed to satisfy his burden to show that the defendants were served by a proper person using a proper method, service on Defendants was not properly affected. *See Sys. Signs Supplies*, 903 F.2d at 1013 (plaintiff bears the burden to show that service was proper). This suit against defendants, filed over 120 days before service was even attempted, should therefore be dismissed. *See* Fed.R.Civ.P. 4(m) (Stating a court may dismiss an action without prejudice "[i]f a defendant is not served within 120 days after the complaint is filed").

### DEFENDANTS MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(B)(1).

When examining a motion to dismiss for lack of subject matter jurisdiction, district court is entitled to consider disputed facts as well as undisputed facts in the record. Fed.Rules Civ.Proc.Rule 12(b)(1), 28 U.S.C.A.; Bryan v. Stevens, 169 F.Supp.2d 676 95th Cir. 2001).

The court may consider evidence outside the pleadings to determine subject matter jurisdiction

on motion to dismiss. Fed. R. Civ. P. 12(b)(1).  Plaintiff hereby attaches and incorporates by reference his Step 1 and Step 2 grievances as evidence of his exhaustion of all administrative remedies; as well as to prove his assertions against the 88 newly named Defendants as well as Defendants TDCJ, Major Enge and Officer Neal.  *See Plaintiff's Exhibits 2 – 9.*

Leave to amend complaint was appropriate following dismissal of claims in Section 1983 action brought by wife of alien detainee who committed suicide in jail while detained under suspicion of committing an illegal entry offense and separated from his family; although wife had filed three prior complaints each alleging the same types of claims, motion to amend was filed before any discovery commenced and before the court ruled on any motions to dismiss and therefore did not cause undue delay, and granting leave to amend would not require any defendant to reopen discovery and prepare a defense for a claim different from one that was before the court. 42 U.S.C.A. S 1983; Fed. R. Civ. P. 15; also *See also Pena Arita v. United States*; 470 F. Supp 3d 663 (5th Cir. 2020).

### Defendants Complain in error that Major Enge and Neal are not Proper Defendants in their OfficialCapacities.

A motion to dismiss for lack of subject-matter jurisdiction is analyzed under same standard as a motion to dismiss for failure to state a claim upon which relief can be granted. Fed.Rules Civ.Proc. Rule 12(b) (1, 6), 28 U.S.C.A. See Hall v. Louisiana, 974 F. Supp 2d 978 (5th Cir. 2013).

Allegations that Louisiana Secretary of State, in his official capacity, had some connection with enforcement of judicial election plan for city, or that he was specifically charged with duty to enforce the plan and was exercising and/or threatening to exercise that duty, were sufficient to state claim for violation of S 2 of the Voting Rights Act (VRA) on basis that the plan impermissibly diluted the votes of African-Americans; as chief election officer of the state, Secretary of State would be required to comply with District Court's orders in that matter and would be involved in

providing, implementing, and/or enforcing whatever injunctive or prospective relief may be granted to plaintiff. Voting Rights Act of 1965, S 2, 42 U.S.C.A. S 1973.

### Hestand properly sues Defendants Major Enge and Officer Neal in their official capacities.

Under rule governing dismissal of complaint for lack of subject matter jurisdiction, a court may dismiss an action for lack of subject matter jurisdiction on any one of three separate bases: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts. Fed. R. Civ. P. 12(b)(1).  See *In Skyrunner, LLC v. Louisiana Motor Vehicle Commission*; --- F.Supp. 3d---- 2020 WL 6092350. Granting aircraft manufacturer leave to amend complaint following dismissal to allege facts demonstrating court's proper exercise of jurisdiction over assistant executive director of Louisiana Motor Vehicle Commission was in interest of justice in action brought by manufacturer against individual employees of Commission; jurisdictional issue was factual in nature, and director may have been subject to court's jurisdiction under Ex parte Young exception to sovereign immunity if manufacturer could point to specific enforcement actions by director. U.S. Const. Amend. 11; Fed. R. Civ. P. 15(a)(2).

Additionally, in *Hafer v. Melo*; 502 US 21; 112 S.Ct. 358 The Supreme Court  held that: (1) state officers may be personally liable for damages under § 1983 based upon actions taken in their official capacities; (2) officers' potential liability is not limited to acts under color of state law that are outside their authority or not essential to operation of state government, but also extends to acts within their authority and necessary to performance of governmental functions; and (3) Eleventh Amendment does not erect barrier against suits to impose individual and personal liability on state officers under § 1983.

### Defendants complain that TDCJ is not a Proper Defendant under 42 U.S.C. § 1983.

On the contrary, The Us Court of Appeals held in Hughes v. Savell; 902 F.2d 376 that the 11th amendment bars an inmate's state law negligence claim against a guard, as Louisiana law required that the guard be sued as an agent of the state.

Government official in role of personal-capacity defendant is "person" subject to suit for damages under S 1983 for actions taken in her official capacity. 42 U.S.C.A. S 1983.The principle of state-sovereign immunity generally precludes actions against state officers in their official capacities, subject to the exception of the Ex parte Young doctrine, under which a federal court, consistent with the Eleventh Amendment, may enjoin state officials to conform their future conduct to the requirements of federal law. U.S.C.A. Const.Amend. 11.

### Defendants complain that Hestand's Use of Force Claim Should be Dismissed.

The core judicial inquiry when a prisoner alleges that prison officers used excessive force against the prisoner, in violation of the Eighth Amendment prohibition of cruel and unusual punishment, is not whether a certain quantum of injury was sustained, but rather whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm; abrogating Norman v. Taylor, 25 F.3d 1259, Riley v. Dorton, 115 F.3d 1159, and Taylor v. McDuffie, 155 F.3d 479. U.S.C.A. Const.Amend. 8.

State prisoner's allegations that corrections officer punched, kicked, kneed, choked, and body slammed him maliciously and sadistically and without any provocation, leaving him with a bruised heel, back pain, and other injuries requiring medical treatment, stated a claim under S 1983 for use of excessive force, in violation of Eighth Amendment prohibition of cruel and unusual punishment. U.S.C.A. Const.Amend. 8; 42 U.S.C.A. S 1983; Wilkins v. Gaddy, 559 U.S. 345 (2010); 130 S.Ct.1175

In *Bourne v. Gunnels*, the Fifth Circuit found that a genuine issue of fact did exist as to whether force employed by prison officers after prisoner was restrained on his cell floor was used in a good faith effort to maintain or restore discipline, or maliciously and sadistically for the very purpose of causing harm, precluding summary judgment in favor of prison officers on prisoner's S 1983 Eighth Amendment excessive force claim. U.S. Const. Amend. 8; 42 U.S.C.A. S 1983; Bourne v. Gunnels 921 F.3d 484 (2019).

Here, Hestand was alone in his cell.  He denies having caused any disturbance.  The named officers rushed into his cell; and even after subduing him on the floor of his cell, they continued to pepper spray him and twist and injure his body and limbs without cause.

Further, a prisoner or pretrial detainee must show some injury, but it need not be "significant". U.S.C.A. Const. Anend, 8;42 U.S.C.A. S. 1983.  Rankin v. Klevenhagen, 5 F.3d 103 (5th Cir. 1993).

### Major Enge's use of pepper spray on him does constitute an excessive use of force

Bailey v. Turner, 149 Fed. Appx 276 (5th Cir. 2005) , held that an Indigent state prisoner's pro se S 1983 claim that city police officer had used excessive force in connection with his arrest was not frivolous, as would warrant dismissal of a claim by prisoner granted in forma pauperis (IFP) status; videotape of arrest did not contradict prisoner's allegation that officer sprayed pepper spray directly into prisoner's eyes, mouth, and nose for as long as 25 seconds while prisoner was handcuffed on the ground and not resisting. U.S.C.A. Const.Amend. 4; 28 U.S.C.A. S 1915(e)(2)(B)(i); 42 U.S.C.A. S 1983.

**Defendants complain that** *Hestand fails to properly allege Officer Neal's personal involvement in the use of force.*

Plaintiff's Opposition to Defendants TDCJ, Jamadre Enge and Neal's Motion to Dismiss
27

A supervisor may be held liable under S 1983 if there exists either (1) his personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation. 42 U.S.C.A. S 1983.

When considering a motion to dismiss for failure to state a claim, a court must determine whether the complaint states a claim for relief that is plausible on its face; a claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Fed. R. Civ. P. 12(b)(6); Wooten v. Roach (E.D. Tex. December 23, 2019).

The Fifth Circuit has held that an officer who is present at the scene and does not take reasonable measures to protect a suspect from another officer s use of excessive force may be liable under section 1983. Hale v. Townley, 45 F.3d 914, 919 (5th Cir. 1995); accord Elliot v. Linnell, 269 F. App'x 450, 451 (5th Cir. 2008). This reasoning applies when a prison guard fails to take reasonable measures to protect an inmate from another guard s use of excessive force. Davis v. Cannon, 91 F. App'x 327, 329 (5th Cir. 2004) (applying Hale in the prison context but finding no bystander liability because there was no excessive force); Garza v. U.S. Marshals Serv., No. Civ.A. B-07-052, 2008 WL 501292, at *3 (S.D. Tex. Feb. 21, 2008) (finding that failure-to-protect claim asserted against a bystander guard survived a motion to dismiss). To succeed on a bystander liability claim, the plaintiff must demonstrate that the state actor (1) knew a fellow officer was violating his constitutional rights, (2) had a reasonable opportunity to prevent the harm, and (3) choose not to act.  Drumm v. Valdez (N.D. Tex., December 3, 2019.

**Defendants claim that Hestand Fails to State a Claim Under the Americans with Disabilities Act and that Hestand's ADA Claim Against Major Enge and Officer Neal in their Individual Capacities Must Be Dismissed.**

The Fifth Circuit Court of appeals remanded *in Cooper v. Hung*, 485 Fed. Appx 680 (2012)

for reconsideration on prisoner's ADA claims, where the district court had dismissed his ADA claims under the erroneous impression that they must be brough against prison officials in their individual capacities; in fact, the prisoner's complaint had challenged the "official capacity" of each defendant.  ADA of 1990, S. 2 et seq., 42 U.S.C.A. S. 12101 et seq.

### Qualifying disability.

Jamon Hestand is housed on a mental health wing in TDCJ, Michael's unit where chronically mentally ill inmates are housed.  Plaintiff's medical records will evidence his specific diagnoses are schizophrenia, bipolar disorder, oppositional defiance disorder, chronic depression, and mood disorder.  Plaintiff's medication log attached hereto as *Exhibit 8* evidence the medications which treat those diagnosis. Plaintiff's disabilities were diagnosed and treated on the unit by the entity and its officials.

A plaintiff must sufficiently allege that both the disability and its consequential limitations were known to the covered entity. See id. at 216 (emphasis added). Plaintiffs can allege that an institution or entity knew of their disability and consequential limitation by alleging they identified their disabilities as well as the resulting limitations to a[n] entity or its employees and requested an accommodation in direct and specific terms. Smith, 956 F.3d at 317. If a plaintiff fails to allege that the covered institution had knowledge of the disability and resulting limitation, he may overcome that failure by alleging that the limitations were open, obvious, and apparent to the institution or its relevant agents. Lee v. Dallas County, (N.D. Tex.  December 16, 2020).

### The Defendants urge that Hestand's Due Process and Deliberate Indifference Claims Must be Dismissed.

Plaintiff however has made so many allegations against 88 separate defendants.  He has successfully articulated those allegations in his attached Step 1 and Step 2 grievances: along with

Plaintiff's Opposition to Defendants TDCJ, Jamadre Enge and Neal's Motion to Dismiss

his I-60s.  Plaintiff hereby incorporates by reference all exhibits attached hereto.

## Prayer

**WHEREFORE, PREMISES CONSIDERED**, Plaintiff, Jamon Hestand respectfully prays that the Defendants TDCJ, Major Jamadre Enge and Officer Barbara Neal's motion to dismiss Plaintiff's Amended Complaint be denied.

Plaintiff further prays that the additional 88 Defendants who were named in Plaintiff's amended Complaint be cited to appear and answer herein.  Finally, Plaintiff prays for leave to amend his Complaint as needed to sufficiently plead additional facts as they become known.

Respectfully submitted,

By: _Tanika J. Solomon_
Tanika J. Solomon
Texas Bar No. 24055713
 Email:  attorney@tjsololaw.com
2120 Welch Street
Houston, Texas 77019
Tel. (713) 640-5956
Fax. (713) 640-5944

Certificate of Service

I hereby certify that pursuant to Federal Rules of Civil Procedure as true and correct copy of the foregoing *Plaintiff's Opposition to Defendants' TDCJ, Major Enge and Officer Neal's Motion to Dismiss* was filed and served on all existing parties of record via electronic service on April 8 2021.

Tanika J. Solomon
Attorney for Plaintiff