IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

| | | |
|---|---|---|
| JAMON HESTAND | § | |
| VS. | § | CIVIL ACTION NO. 6:20cv71 |
| CAPTAIN J. ENGE, ET AL. | § | |

<u>REPORT AND RECOMMENDATION OF THE</u>
<u>UNITED STATES MAGISTRATE JUDGE</u>

Plaintiff Jamon Hestand, a prisoner currently confined at the Michael Unit within the Texas

Department of Criminal Justice (TDCJ), through retained counsel, filed this civil rights lawsuit

pursuant to 42 U.S.C. § 1983 alleging purported violations of his constitutional rights occurring at

the Michael Unit.  The case was referred to the undersigned United States Magistrate Judge for

findings of fact, conclusions of law, and recommendations for the disposition of the case.

The present Report and Recommendation concerns Defendants' motions to dismiss, (Dkt.

## 26, 40), as well as Plaintiff's counsel's failure to perfect proper service. For the reasons

explained below, the Court recommends that both Defendants' motions to dismiss be granted and

all remaining claims against remaining defendants be dismissed, without prejudice. In the interests

of justice, however, the Court recommends that the statute of limitations in this case be suspended

for a period of 60 days after the entry of final judgment.

**I. Procedural History**

Through counsel, Plaintiff Hestand filed his initial complaint on February 13, 2020, and

submitted the entire $400.00 filing fee. On May 18, 2020—ninety-five days later—the undersigned

issued a show cause order, (Dkt. #5), pursuant to Federal Rule of Civil Procedure 4(m) because no

evidence of service on Defendants existed on the record. Subsequently, on June 5, 2020, Plaintiff

issued summons to Defendant Enge, Neal, and TDCJ, (Dkt. #6). Summons was returned for all three defendants on July 27, 2020, (Dkt. ### 8, 9, 10).

Plaintiff then filed a motion for leave to file an amended complaint, which the undersigned granted on October 13, 2020. Hestand filed the amended complaint on January 21, 2021, (Dkt. #20), and this amended complaint is the operative pleading. The amended complaint added over eighty Defendants.  Defendants Enge, Neal, and TDCJ filed a motion to dismiss Hestand's amended complaint on March 24, 2021, (Dkt. #26). Hestand filed a response to the motion, (Dkt. #29), and Defendants filed a reply, (Dkt. #30).

Moreover, on May 17, 2021, Hestand filed a motion for an extension of time, (Dkt. #32), to effectuate service on the remaining eighty-plus defendants. Citing costs to serve each and every defendant and the alleged egregious facts/injuries in this case, Hestand requests an additional thirty days to effectuate service. The docket reflects that, the very next day, Hestand filed issued summons, (Dkt. ##33, 34), and on June 16, 2021, summons was returned as "executed" for Defendants Lumpkin and Davis, (Dkt. ##35, 36). Hestand also filed, on June 16, 2021, an affidavit of non-service on 84 persons, (Dkt. #37).

Defendants Lumpkin and Davis filed a motion to dismiss under Rule 12(b)(1), and (6) on August 10, 2021, (Dkt. #40). A few days later, on August 16, 2021, Hestand filed his "first motion for substituted service," (Dkt. #41). In this motion, Hestand explains that his attempts to serve on 84 defendants have been unsuccessful—and attached an "affidavit of due diligence" from the process server, which is dated June 16, 2021.

## II. Plaintiff Hestand's Amended Complaint

Hestand's amended complaint, (Dkt. #20), is the operative pleading in this cause of action. An amended complaint entirely supersedes and takes the place of the original complaint. *See Clark*

*v. Tarrant Cnty., Tex.*, 798 F.2d 736, 740 (5th Cir. 1986). He alleges that eighty-plus defendants employed by TDCJ violated his constitutional rights through a variety of claims: multiple incidents of an alleged excessive use of force, retaliation, denial of medical care, and the alleged denial of due process.

### A. February 13, 2018 Use of Force

Hestand maintains that, on February 13, 2018, prior to lunchtime, Defendant Enge and Defendant Neal entered his cell and began to "throw [his] personal items from one side of the cell to the other." Defendants placed some property in a large bedding sheet and explained to Hestand that they were investigating whether he had started a fire. Hestand further maintains that "[w]hen Defendants took the property, neither he nor any other TDCJ employee, gave Plaintiff any property confiscation papers for the property that had been taken from [his] cell." He claims that Defendant Enge "instructed other officers on the cell block not to feed [him] that day[,] and they did not."

Subsequently, around 2:30 p.m. on the same day, Defendant Enge and a five-man team entered Hestand's cell at 12 Building A-Pod-78. Captain Enge then sprayed Hestand "with chemical agents in rapid succession and with such force that [Hestand] was unable to stand, [breathe], follow instructions," which "made it impossible for [Hestand] to hear or comprehend the orders he was given."

The five-man team consisted of Defendants Aguilar, Castile, Jackson, Davis, and Garner— and was accompanied by Defendant Thompson who operated the video. The five-man team "ran in" and slammed Hestand into the wall and floor with such force that Hestand suffered broken ribs, injuries to his back and neck, broken blood vessels, a concussion, a broken leg, a fractured knee, and a large open wound to the side and back of his head. Hestand was limp, did not fight back, and begged for his life to be spared. More specifically, Hestand states the following:

Immediately upon entry into Plaintiff's cell, Defendants named in this incident opened Plaintiff's door, they slammed Plaintiff to the ground face down and immediately was attacked by the first man in the cell, whom Plaintiff identifies as Defendant Jamadre [Enge]. A second Defendant crammed his fingers into both of Plaintiff's eyes and causing the blood vessels in his eyes to burst. Plaintiff suffered extreme pain. At that point Plaintiff was completely blinded. One of [the] identified members of the 5-man team of Captain Jamadre Eng[e] himself proceeded to slam the right side of Plaintiff's head into the steel toilet/sink repeatedly, which caused blood to flow from Plaintiff's head and caused severe pain. At the same time, someone else behind Plaintiff twisted his right leg until it was injured. At the same time, yet another of the named TDCJ officers twisted Plaintiff's thumb as if to try to break [sic] off. Defendants injured Plaintiff's right hand by twisting and bending it. Plaintiff[] endured punches, bruises and kicks about the torso.

During the same assault, one of the named members of the 5-man team proceeded to punch Plaintiff repeatedly in the back of his head with his fist, smashing his forehead into the concrete floor repeatedly. All the while, yet another of the named TDCJ officers repeatedly shouted for Plaintiff to "Stop resisting!" This in spite of the fact that Plaintiff was physically unable to resist or move on his own even if he tried [due] to the number of people pulling his extremities in opposite directions[,] and beating him about the head.

(Dkt. #20, pg. 13-14). Once the assault ended, Hestand claims that the team forced him from his cell, at which point his right knee gave out from his injury as he attempted to walk. Officers then carried him out on a stretcher; the nurse who was present throughout the incident evaluated him and released him back to security. Hestand then claims he was "dropped onto the floor," exacerbating his injuries—particularly to his back.

Defendant Gage, Nurse, ignored Plaintiff and "released Plaintiff back to the dorm area rather than ordering Plaintiff to be taken to the infirmary or to ship him to proper medical treatment at a hospital. Instead, "Plaintiff was thrown into a cell and placed on suicide watch," as he remained blinded by the chemical agents and in serious pain for several days thereafter. *Id*. at pg. 15.

Ten hours later, Hestand maintains that he was finally taken to medical around midnight on a stretcher. He explains that, at this point, he was able to open his eyes slightly; however, the blood vessels were busted. Hestand notes that his right hand was swollen, and his ribs as well as his right knee were broken. Moreover, he was unable to use his hand or leg at all—further suffering

from a bulging eardrum, a swollen head on the front and right sides, a head that was still bleeding from the back, swollen and black eyes, trouble breathing, and an irregular pulse. Hestand highlights how he was shaking uncontrollably and disoriented. He states that he was ultimately transported to the Palestine Regional Hospital where a CAT scan was performed. However, he was not provided any pain medication and was "shipped back" to his unit on a regular transport van "in serious pain with severe injuries." Hestand then explains what happened next:

> Once Hestand was returned to the Michael[] unit—which was approximately 16 hours after the original assault—he was provided Ibuprofen for pain and an X-ray was ordered. The X-ray revealed broken ribs and a reinjured knee. Hestand explains that as he breathes, his lungs are "punctured," and that he continues to hear a ringing, piercing sound in his ears that never or seldom ceases.

B. March 9, 2020 Use of Force

Hestand asserts that he was assaulted again on March 9, 2020 by unit staff and then denied medical treatment for his injuries. Specifically, he explains that he was sprayed excessively with chemical agents in his eyes; his arms were slammed in the food tray slot; an officer "pressed his foot into [his] neck and throat"; and he was punched in his left ear, eye, and forehead by an officer. His knee was "also damaged in this melee." Hestand admits that he cannot specify which officer(s) committed each act against him—as his time "was spent trying to avoid further eye injuries."

Moreover, Hestand notes that the use of force was not captured on video "because Lt. Brannon ordered them turned off or away" and then remarked to Hestand, "This is what you get for filing lawsuits!" He argues that he was given no medical attention after this use of force—and was not decontaminated and continued to suffer. While he filed grievances concerning the incident, they were ignored and/or lost or destroyed.

C. April 5, 2020 Use of Force

Hestand maintains that on April 5, 2020 he was subjected to an assault by officers Lt. McArthur, Sgt. Nzerhe, Sgt. Whittlesey, and Ms. Mengel. According to Hestand, the incident occurred as follows:

> Slightly before 6pm on this date, another inmate kept knocking out the cell power and lights for fun. As a result, several other inmates lit small fires in the hallway outside of the cells. As [] Sgt. Nezeribe was putting out the fire with a large water hose, he and his crew caused Plaintiff's property in his cell to be drenched. Plaintiff, who had not been involved in the bad acts[,] was irritated. This led to an exchange of words between the officers[] and a use of excessive force against Plaintiff by a 5-man team.

> The officers first told [Hestand] that he was being taken to another cell and then they would bring his property. [Hestand] was taken out of the soggy, now filthy cell and placed on the floor, in the water. Then the officers went into [his] cell, packed his property and carried it out. [Hestand] is required to walk on a cane and cannot transport his own property while injured, and while walking back on a slippery floor under restraint. [Hestand] was instructed to follow officers back into his cell—about three feet into the cell, far enough into the cell that the cameraman CO. Olubunmi Oseye could deliberately not see; [Hestand] was attacked from all sides by the officers. Both the Lt. and Sgt. who were on site[] allowed this assault to occur. [Hestand] was kneed and kicked repeatedly in the head and back, punched all over the head and back, his right foot/ankle was stomped into the concrete, and he was stomped, his head was continuously banged into the concrete, slapped in the face, kicked and beat all over his body.

> [Hestand] was viciously assaulted with blood dripping down his face, and he begged the officers to stop. [Hestand] was seriously hurt. [Hestand] was given x-rays for his back, right shoulder, and his right foo[t]/ankle. [Hestand's] head was wrapped, but not checked properly. [Hestand] was beaten without mercy.

D. Malicious Prosecution and Retaliation—November 5, 2018 Incident

Hestand further explains that on May 27, 2020—after filing his excessive force lawsuit against prison officials—he was indicted for the offense of causing serious bodily injury to Officer Quana Goodman. According to Hestand, this charge "flows from a false allegation that Plaintiff dashed an officer in the eye with a cup of hot water while inside of his cell through a food slot door. He insists that he had no ability to heat his water to make it hot and the tray slot could not have afforded him the opportunity to reach anybody's eye. As a result, Hestand claims that he was

"so brutally beaten that 21 staffers had to tend to him." He filed numerous grievances, and no disciplinary action was taken against him until he filed this present lawsuit.

Furthermore, Hestand asserts that Officer Goodman, as well as other officers, came into his cell and told him that the "[A]** beating that he will receive today is because [Hestand] had the nerve to sue Texas Department of Criminal Justice." An officer referenced earlier beatings against Hestand, in an effort to scare him. At this point, the officers "began to beat and punch" him. Hestand insists that the filing of his case is malicious prosecution against him in retaliation for filing this lawsuit and that the timing of the indictment—four months after this lawsuit was filed—was "designed to interfere with [his] parole eligibility."

### E. Access to Grievances and Legal Resources

Hestand claims that, in an attempt to seek redress for the February 2019 assault, he filed more than 122 grievances. Many more were filed, but only 122 were actually returned to him— and those that are returned go unanswered, remedy is denied, and no wrongdoing is found. Ultimately, Hestand seeks damages in the amount above $200,000 on each claim.

## III. Defendants' Motions to Dismiss and Plaintiff's Motion for Substituted Service

Defendants Neal, Enge and TDCJ filed a motion to dismiss, (Dkt. #26). On August 10, 2021, Defendants Lumpkin and Lorie Davis also filed a motion to dismiss, (Dkt. #40).

### A. Defendants Neal, Enge, and TDCJ's Motion to Dismiss

These defendants filed a motion to dismiss, (Dkt. #26), pursuant to Federal Rule Civil Procedure 12(b)(1), (5), and (6). Defendants maintain that Hestand's amended complaint should be dismissed under Rule 12(b)(5) for the failure to properly serve Defendants. Specifically, Defendants argue that although Hestand filed this suit on February 13, 2020, he failed to serve any of the Defendants until after the Court's show cause order on May 28, 2020. Even then, Hestand

did not attempt service on either Major Enge or Officer Neal until almost two months later on July 14, 2020. However, even when he attempted to serve process on July 14, 2020 by certified mail, Defendants argue that the certified mail receipts attached to the returns of service were signed by Macie Weir—not Defendants, which is contrary to Texas law. Defendants further argue that TDCJ is not a proper Defendant and that Hestand fails to state a claim upon which relief may be granted.

B. Defendants Davis and Lumpkin's Motion to Dismiss

In their motion to dismiss, Defendants Davis and Lumpkin insist that Hestand failed to allege any personal involvement on behalf of them in his amended complaint. They also argue that they are entitled to qualified immunity.

C. Hestand's Motion for Extension of Time to Perfect Service and Subsequent Motion for Substituted Service.

On May 17, 2021—approximately one year and three months after initiating this lawsuit—Hestand filed a motion for an extension of time in which to perfect service, (Dkt. #32). In this motion, Hestand explains that certain defendants have been served—but that he is "attempting to serve approximately 82 other defendants in this same case. The service in these cases is taking more time because Plaintiff is required to pay for such service and requires the money to serve each and every Defendant."

Hestand insists that he has good cause for an extension of time. Specifically, he cites that he was maliciously and sadistically injured by the Defendants—which, taking his pleadings as true, is clear under Eighth Amendment precedent. In absence of good cause, he asks this Court to use its discretion to extend the time for service—particularly because of the "great expense" in order to serve the remaining 82 defendants. The docket reflects that after Hestand filed this motion for an extension of time, Defendants Davis and Lumpkin were served.

Subsequently, on August 16, 2021, Hestand filed his first motion for substituted service, (Dkt. #41). In support, counsel for Hestand explains that "attempts to serve process on eight[y]-four (84) Defendants have been unsuccessful," with an attached affidavit from a process server. Counsel maintains that the Federal Rules provide for service, including substituted service. She argues that personal service has been unsuccessful. The process server's affidavit reads as follows:

> On June 7, 2021, at approximately 5:30PM, I received Summons and a Copy of Plaintiff's Petition to serve all 86 defendants listed on the Complaint.

> After multiple attempts to Huntsville, Texas, and to Michael Unit in Tennessee Colony, I was unable to serve the remaining 84 defendants. I have attempted to serve at administrative offices and at the prison unit.

> On Friday, June 11, 2021, at approximately 2:30PM, my attempt to serve the remaining defendants at the following address: 2664 FM2054, Tennessee Colony, TX 75886 was unsuccessful. When I arrived to perform service, the person who identified himself as the Warden, whose name I recall was Smith, directed [me] away and refused to allow me to inquire about the individuals in my summonses, refused to accept the Summons and advised that she would not allow me on her premises to perform my official duty to serve this summons upon any member of the staff.

> After searching and calling around, I attempted another trip to Huntsville on June 15, 2021, at 8:30AM to serve the Summons to the head office, where yet again I was given the run-around and not provided information to assist me with service or to allow me further entrance onto the premises.

> I continue to perform due diligence at the request of the Attorney of record for Plaintiff. However, to-date, my efforts have been rejected by supervisors and staff where most of these Defendants may be found.

(Dkt. #41, pg. id. #598) (sworn affidavit). The docket reveals that—despite this lawsuit alleging serious constitutional violations with egregious acts and injuries being initiated in February 2020—only two Defendants have been served out of the approximately 86 named defendants. It is now September 2021, and once again, this is a case wherein Plaintiff is represented by counsel.

**IV. Legal Standards**

The Court understands that Hestand has raised claims concerning alleged multiple uses of force committed against him while housed at the Michael Unit. Moreover, Hestand raised claims concerning retaliation and malicious prosecution. The Court will address the pending motions to dismiss before turning to the crucial question of proper service.

1. Motions to Dismiss

The Fifth Circuit has observed that motions to dismiss under Rule 12(b)(6) are "viewed with disfavor and rarely granted." *See Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011). Such motions are generally evaluated on the pleadings alone. *See Jackson v. Procunier*, 789 F.2d 307, 309 (5th Cir. 1986).

Nevertheless, Federal Rule of Civil Procedure 12(b)(6) permits dismissal if a plaintiff "fails to state a claim upon which relief may be granted." A complaint fails to state a claim upon which relief may be granted where it does not allege sufficient facts which, taken as true, state a claim which is plausible on its face and thus does not raise a right to relief above the speculative level. *See Montoya v. FedEx Ground Packaging Sys. Inc.*, 614 F.3d 145, 149 (5th Cir. 2010) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A claim has factual plausibility when the pleaded factual content allows the court to draw reasonable inferences that the defendant is liable for the misconduct alleged. *See Hershey v. Energy Transfer Partners, L.P.*, 610 F.3d 239, 245 (5th Cir. 2010); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This plausibility standard is not akin to a probability standard; rather, the plausibility standard requires *more than the mere possibility* that the defendant has acted unlawfully. *Twombly*, 550 U.S. at 556 (emphasis supplied).

Although all well-pleaded facts are taken as true, the district court need not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions. *See Whatley v.*

10

*Coffin*, 496 F. App'x 414, 2012 WL 5419531 (5th Cir. Nov. 7, 2012) (citing *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005)).  Crucially, while the federal pleading rules do not require "detailed factual allegations," the rule does "demand more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678.  A pleading offering "labels and conclusions" or a "formulaic recitation of the elements of a cause of action" will not suffice, nor does a complaint which provides only naked assertions that are devoid of further factual enhancement. *Id*.

2. Service of Process Generally

The rules for serving process are intended to give defendants sufficient notice of an action filed against them. *See* 4 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1061 (4th ed. 2019) ("[Federal Rule 4] was designed to provide maximum freedom and flexibility in the procedures for giving all defendants...no matter where they might be located, notice of the commencement of the action."); *see also Goetz v. Synthesys Techs., Inc.*, 415 F.3d 481, 484 (5th Cir. 2005) (the primary purpose of the service requirements is to give defendants actual notice of litigation against them).

As Defendants highlight, the procedural requirements concerning service of summons **must** be satisfied before a court has personal jurisdiction over a defendant. *See Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 350 (1999) (emphasis suppled); *see also Maiz v. Virani*, 311 F.3d 334, 340 (5th Cir. 2002) (holding that the district court lacked personal jurisdiction over a defendant who neither received service of process nor made a general appearance). When a defendant challenges service of process, the serving party bears the burden of proving that valid service has been accomplished or that good cause exists for the failure to effect service. *See Thrasher v. City of Amarillo*, 709 F.3d 509, 511 (5th Cir. 2013). Good cause requires "at least as much as would be required to show excusable neglect, as to which simple

inadvertence or mistake of counsel or ignorance of the rules usually does not suffice." *Id.* (quoting

*Winters v. Teledyne Movible Offshore, Inc.*, 776 F.2d 1304, 1306 (5th Cir. 1985)).

Service is governed by Federal Rule of Civil Procedure 4(e). When serving an individual

within the United States, the rule states as follows: Unless federal law provides otherwise, an

individual—other than a minor, an incompetent person, or a person whose waiver has been filed—

may be served in a judicial district of the United States by

> (1) following the state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made; or
>
> (2) doing any of the following:
>
>> (A) delivering a copy of the summons and of the complaint to the individual personally;
>>
>> (B) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or
>>
>> (C) delivering a copy of each to an agent authorized by law to receive service of process.

Fed. R. Civ. P. 4(e). Under Texas law, service of process may be accomplished by personal service

upon a defendant or by mailing the service of documents to the defendant "by registered or certified

mail, return receipt requested."  *See* Tex. R. Civ. P. 106(a). Alternatively, if these two methods

fail, Texas provides for substituted service upon a motion supported by an affidavit by leaving a

copy of the service documents at a defendant's residence, place of business, or any other manner

deemed to be reasonably effective to give the defendant notice. *See* Tex. R. Civ. P. 106(b)(1)-(2).

Indeed, a party may raise insufficient process or insufficient service of summons by

moving to dismiss under Rules 12(b)(4) or 12(b)(5). Dismissal for the failure to timely serve is

without prejudice and is reviewed on appeal for an abuse of discretion. *Thrasher*, 709 F.3d at 511.

A plaintiff can meet the burden of establishing that the defendant was properly served by producing

the process server's return of service, which is generally accepted as *prima facie* evidence that service was properly effected. *Nabulsi v. Nahyan*, No. H-06-2683, 2009 WL 1658017, at *4 (S.D. Tex. June 12, 2009), *aff'd sub nom. Nabulsi v. Bin Zayed Al Nahyan*, 383 F. App'x 380 (5th Cir. 2010). "Unless some defect is shown on the face of the return, a motion to dismiss under Rule 12(b)(5) requires the defendant to produce admissible evidence establishing the lack of proper service."

## V. Discussion and Analysis

The Court will address Defendants' pending motions to dismiss before turning to Hestand's motion for substituted service.

### A. Defendant Enge, Neal, and TDCJ's Motion to Dismiss and Hestand's Response

As mentioned, Defendants maintain that they were not properly served and further argue that Hestand failed to show personal involvement. Moreover, TDCJ argues that it is not a proper defendant, (Dkt. #26).

In response, (Dkt. #29), Hestand reiterates claims within this amended complaint. Further, he argues that he had good cause not to have effected service on Defendants Enge, Neal, and TDCJ until 120 days after filing. In arguing that good cause exists, Hestand argues that he filed his complaint at the start of the COVID-19 pandemic—at which point courts, prisons, law offices, and businesses were shut down, as "[l]itigants and their agents were operating by the seat of their pants to keep actions moving forward." Hestand also notes that "[a]ny delay or lack of service by Plaintiff has been primarily because of his day-to-day challenges," including his food, "mental torture," prisoners starting fires and flooding their cells, and assaults.

*1. Service of Process—Defendants Enge and Neal*

A review of the motion to dismiss, Hestand's amended complaint, and the docket shows that Defendants Enge, Neal, and TDCJ's motion should be granted. First, Defendants are correct: Hestand did not properly serve Defendants Enge and Neal. The docket reflects that Hestand attempted to serve Defendants Enge and Neal via certified mail, (Dkt. ##9, 10). The certified mail receipts attached show that Macie Weir signed for the documents—not Defendants Enge or Neal. Because Texas law requires a return of service to include a certified mail receipt signed by the addressee when serving by certified mail, Defendants Enge and Neal were not properly served. *See* Tex. R. Civ. P. 107(c); *see also Ramirez v. Consol. HGM Corp.*, 124 S.W.3d 914, 916 (Tex.App.—Amarillo 2004, no pet.) (explaining that "a return of citation served by registered or certified mail must contain the return receipt, and the latter must contain the addressee's signature."); *Mena v. Lenz*, 2009 WL 542489, at *4 (Tex.App.—Corpus Christi 2009, no pet.) (service by mail under Rule 106 is defective if return receipt is not signed by the addressee).

Here, the two return receipts indicate that Macie Weir signed as the recipient, (Dkt. ##9, 10). Macie Weir is not the addressee. Accordingly, Hestand's attempt to serve process on Defendants Enge and Neal was defective. *See Ayika v. Sutton*, 378 F. App'x 432, 434 (5th Cir. 2010) (unpublished) ("Texas law authorizes service of process via registered or certified mail, with return receipt requested. The return receipt must bear the addressee's signature.") (internal citation and quotations omitted).

Furthermore, Defendants correctly highlight that the validity of service depends on whether the person who sent the summons via certified mail was actually authorized to do so under Rule 103. Under Rule 103, service may only be performed by "(1) any sheriff or constable or other person authorized by law, (2) any person authorized by law or by written order of the court who is

14

not less than eighteen years of age, or (3) any person certified under order of the Supreme Court."
The Rule also provides that "[s]ervice by registered or certified mail and citation by publication
must, if requested, be made by the clerk of court in which the case is pending." Federal courts
throughout Texas have interpreted this portion of the Rule to allow only the clerk of court—and
no other persons—to serve by certified mail.  *See, e.g.*, *Davis v. G.E. Money Bank*, 2011 WL
13323924, at *1 (E.D. Tex. Aug. 4, 2011) ("Although Texas law permits service of process via
certified mail, return receipt requested, only the clerk of court may serve in this manner.") (citing
Tex. R. Civ. P. 103, 106(a)(2)); *Dickey v. State Farm Bank, F.S.B.*, 2018 WL 2454159, at *6 (S.D.
Tex. May 10, 2018) (same).

Here, the returns of service for Defendants Enge and Neal, (Dkt. ## 9, 10), demonstrate
that a process server, Everett Von Moore, attempted service. However, the returns of service do
not indicate whether Moore is a private process server or whether he is authorized by law or court
to serve the defendants. While Hestand argues that Moore is "a person duly authorized under the
JBCC to service process during emergency management conditions," Hestand provides no support
for this contention. Hestand directs the Court to Exhibit A; however, there is no attachment or
Exhibit A to be found. Because Hestand bears the burden of demonstrating that service was proper,
the Court finds that service was not proper on Defendants Enge and Neal. *See Isais v. Marmion
Indus. Corp.*, 2010 WL 723773, at *3 (S.D. Tex. Feb. 24, 2010) ("Because plaintiff has failed to
present any evidence showing that Pendergrass is a 'person authorized by Rule 103' to serve
process upon the defendants, the court concludes that plaintiff has failed to satisfy his burden to
show that the defendants were properly served by a proper person using a proper method and,
therefore, that service on the defendants was not properly effected.").

Hestand insists that good cause exists because of his imprisonment and the COVID-19 pandemic. The Court finds that these reasons are insufficient to demonstrate good cause. First, this is a case wherein Hestand is represented by counsel. Hestand's imprisonment has no bearing whatsoever on his counsel's failure to perfect service. Defendants' contention that "Plaintiff's counsel is solely responsible for effectuating service on the Defendants and for demonstrating more than inadvertence or mistake on her part" is well-taken.

Second, Hestand filed his initial complaint in February 2020—prior to COVID-19 protocols commencing in Texas. Governor Abbott signed the disaster declaration related to COVID-19 on March 13, 2020. This Court has been open during the entirety of the COVID-19 pandemic and Hestand did not attempt to effectuate service until after the undersigned issued the Rule 4(m) show cause order on May 18, 2020, months after the initial complaint was filed. Similarly, Hestand did not contact the Court in 2020 concerning any inability to effectuate service; rather, he simply responded to Defendants' motion to dismiss that he had good cause and then, in May 2021, after he filed his amended complaint on January 21, 2021, asked this Court for an extension of time to effectuate service.

Hestand's contention that COVID-19 forced litigants to operate by the seat of their pants to keep actions moving forward is belied by the fact that Hestand hired a process server a few weeks after the undersigned's Rule 4(m) warning during the midst of COVID-19. Counsel's attempt to blame her client's imprisonment and the COVID-19 pandemic on her failure to serve properly—after a warning from the Court and Defendants' motion to dismiss that also placed her on notice that service was an issue—is unpersuasive.

## 2. *Defendant TDCJ and Eleventh Immunity*

Turning to Defendant TDCJ, the Court notes that TDCJ is not a proper defendant. TDCJ is not a "person" under section 1983 and, therefore, is not a proper defendant. Absent waiver by the State of sovereign immunity or valid congressional override, the Eleventh Amendment bars remedy for damages, regardless of the type of damages, in federal court against a state or state instrumentality. *See Kentucky v. Graham*, 473 U.S. 159, 169 (1985).

Because TDCJ is a state agency and there is no evidence of consent to suit, Hestand's lawsuit against TDCJ for monetary relief under section 1983 is barred by the Eleventh Amendment. *See Cox v. Tex.*, 354 F. App'x 901, 902-03 (5th Cir. 2009) (unpublished) (rejecting an *Ex Parte Young* argument and concluding that "[n]either Texas nor TDCJ has waived its immunity; therefore, Appellee's claims against them are barred by the Eleventh Amendment."). Hestand's claims against TDCJ should be dismissed with prejudice. *See Aguilar v. Tex. Dept. Crim. Justice*, 160 F.3d 1052, 1054 (1998) ("And, as an instrumentality of the state, TDCJ-ID is immune from Aguilar's suit on Eleventh Amendment grounds.").

## B. Defendants Davis and Lumpkin's Motion to Dismiss

Defendants Davis and Lumpkin maintain, (Dkt. #40), that Hestand failed to state a claim in his amended complaint upon which relief may be granted. Indeed, personal involvement is an essential aspect of a section 1983 cause of action. *See Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir. 1983) ("Personal involvement is an essential element of a civil rights cause of action.") (citing *Rizzo v. Goode*, 423 U.S. 362, 371-72 (1976) (must be an affirmative link between injury and conduct of defendant)). The Court notes that Hestand did not file a response to this motion.

Here, Hestand's amended complaint alleges no specific facts against either Defendant Davis or Lumpkin. *See generally* Dkt. #20. He makes no connection whatsoever between any

action of Defendants Davis or Lumpkin to an alleged constitutional violation. A review of Hestand's amended complaint reveals that Defendants Davis and Lumpkin are mentioned **only** in the caption concerning named defendants; in other words, there are neither specific allegations nor specific facts concerning the actions of Defendants Davis or Lumpkin. Accordingly, Hestand fails to allege personal involvement with respect to these two defendants.

Moreover, because Hestand alleged no facts involving Defendants Davis or Lumpkin, it stands to reason, then, that Hestand is suing them under a supervisory liability theory. The doctrine of respondeat superior, however, does not apply to section 1983. *Williams v. Luna*, 909 F.2d 121, 123 (5th Cir. 1990); *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 691 (1978). Under 42 U.S.C. § 1983, supervisory officials are not liable for a subordinate's actions on any vicarious liability theory. In fact, the Supreme Court has held that the term "supervisory liability" is actually a misnomer since "[e]ach Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *See Iqbal*, 556 U.S. at 677. In *Iqbal*, the Supreme Court rejected an argument that government officials may be held liable because they merely had knowledge or acquiesced in their subordinate's misconduct. *Id.* As a result of *Iqbal*, other courts have questioned whether supervisory liability remains an option at all in section 1983 cases. *See, e.g.*, *Dodds v. Richardson*, 614 F.3d 1185, 1194-95 (10th Cir. 2010); *Parrish v.Ball*, 594 F.3d 993, 1001 n.1 (8th Cir. 2010).

The Fifth Circuit has not yet interpreted this holding in *Iqbal*. Nevertheless, under current Fifth Circuit jurisprudence, a supervisor may only be held liable if one of the following exists: (1) his personal involvement in the constitutional deprivation, (2) sufficient causal connection between the supervisor's wrongful conduct and the constitutional violations, or (3) the supervisory official implements a policy that itself is a repudiation of civil rights and is the moving force of

the constitutional violation.  *See Mesa v. Prejean*, 543 F.3d 264, 274 (5th Cir. 2008); *see also Pena v. City of Rio Grande City*, 879 F.3d 613 (5th Cir. 2018) (explaining that a plaintiff in a section 1983 case establishes supervisor liability "if (1) [the supervisor] affirmatively participates in the acts that cause the constitutional deprivation, or (2) [the supervisor] implements unconstitutional policies that result in the constitutional injury.") (internal citation omitted).

Importantly, in order to demonstrate that a supervisor is liable for constitutional violations committed by subordinate employees, "plaintiffs must show that the supervisor act[ed], or fail[ed] to act, with *deliberate indifference* to violations of others' constitutional rights committed by their subordinates." *Id*. (citing *Porter v. Epps*, 659 F.3d 440, 446 (5th Cir. 2011)).

Here, however, Hestand has not specified a particular policy that these supervisors have created that resulted in a constitutional violation and—as explained above—has demonstrated no personal involvement concerning any act attributable to either Defendant Davis or Lumpkin. Therefore, any respondent superior claim fails. Because Hestand, in his amended complaint, failed to plead or show personal involvement and failed to identify a policy implemented by these defendants that resulted in a constitutional violation, all claims against Defendants Davis and Lumpkin should be dismissed, with prejudice.

### C. Hestand's Motion for Substituted Service

Six days after Defendants Davis and Lumpkin filed their motion to dismiss, on August 16, 2021, Hestand filed a "first motion for substituted service," (Dkt. #41). In support, counsel for Hestand again states that "[a]ttempts to serve process on eight[y]-four (84) Defendants have been unsuccessful." As mentioned previously, counsel for Hestand attached an affidavit from Mr. Syed Moazzam Ali, process server, which is dated June 16, 2021. Without repeating the entire affidavit, the process server explains that throughout June 2021, he made multiple attempts to serve the

remaining defendants at the Michael Unit—to no avail. The Court notes that this is the exact same "affidavit of due diligence" previously filed on June 16, 2021, when counsel for Hestand filed an "affidavit of non-service," (Dkt. #37).

Indeed, the Federal Rules of Civil Procedure provide for service, including substituted service, upon individuals within the judicial district. By delivering a copy of the summons and the complaint to the individual personally, or by leaving copies thereof at the individual's dwelling house or usual place of abode with some person of suitable age and discretion, or by delivering a copy of the summons and of the complaint to an agent authorized by appointment or by law to receive service of process. *See* Fed. R. Civ. P. 4(e)(2). Counsel for Hestand states that "service in this case has been unsuccessful."

The Court recommends that this motion be denied. As explained above, this lawsuit was filed on February 13, 2020—by a licensed attorney. The docket reflects that no summons was issued or even attempted until this Court issued its Rule 4(m) warning on May 18, 2020. Once summons was issued after the show cause order, counsel for Hestand failed to serve two defendants properly—despite the order warning about proper service.

On January 15, 2021, as mentioned, Hestand filed his amended complaint, which is the operative pleading and restarted the service clock. However, yet again, counsel for Hestand failed to effect service within 90 days—as she waited until May 17, 2021, to file an extension of time to effect service and then filed summons on May 18, 2021—over 100 days since the amended complaint was filed. The Court notes that throughout Hestand's pleadings, counsel references that the Federal Rules provide for 120 days to effect service. This is no longer the case, since the Rule was changed in 2015, almost seven years ago. Under Federal Rule 4(m), generally, a defendant

20

must be served within 90 days—not 120. Hestand is represented by counsel, who is admitted to practice in federal court, but failed to recognize this important rule change.

Unfortunately, the problems do not cease there. Counsel began again issuing summons in May 2021 and June 2021. Counsel then filed the affidavit of non-service, indicating that the process server—throughout June 2021—was unable to effect service on 84 defendants at the Michael Unit. The crucial issue here is that counsel unacceptably waited until June 2021 to begin attempting to perfect service on the amended complaint and waited until August 16, 2021, to file a motion for substituted service.

This lawsuit was filed in January 2020 and alleges serious and appalling facts. To date, this case has been pending over 612 days, or 1 year and eight months—and service has still not been perfected on at least 86 defendants. Only Defendants Davis and Lumpkin were properly served in this case. Furthermore, Hestand has filed pro se letters to the Court throughout the pendency of this case, (Dkt. ### 4, 17, 25, 31, 42), asking about the status of his case, further explaining to the Court that he cannot receive a response from his counsel, asking what she filed on his behalf, asserting that he wants to participate, and that he does not want his lawsuit dismissed. Given that Hestand is represented by counsel, he should not be forced to inquire with the Court about the status of his case or why his counsel will not communicate with him.

The Texas Bar Association online database reveals that counsel for Hestand has been licensed in the state of Texas since 2008 and is admitted to practice in the United States District Court for the Southern District of Texas. The Court finds it baffling to say the least that a licensed attorney cannot properly effect service for over one year even after a notice from the Court *and* Defendants' motion to dismiss that again placed her on notice concerning service issues. Counsel's

failure to file a motion for substituted service until August 16, 2021 is particularly troubling given the allegations in this lawsuit.

With respect to the process server's "affidavit of due diligence," dated June 16, 2021, the Court notes that such affidavit is not germane to counsel's due diligence—or lack thereof. Given that the affidavit explains that the first day the process server received the summons and copy of the amended complaint to serve on eighty-plus defendants was on June 7, 2021, such shows counsel's lack of due diligence. While the process server has been arguably diligent, counsel has not.

## VII. Conclusion

Defendants' motions to dismiss should be granted. First, counsel failed to properly serve Defendants Enge and Neal. Second, TDCJ is not a proper defendant under section 1983. Third, counsel for Hestand pleaded no facts or specifics indicating that Defendants Davis or Lumpkin had personal involvement in any action or constitutional violation. Finally, with respect to the remaining Defendants, Hestand's lawsuit against them should be dismissed, without prejudice, for counsel's failure to properly effect service after 16 months. In the interests of justice, however, the Court recommends that the statute of limitations in this case be suspended for a period of 60 days given counsel's basic failure to properly represent her client.

<u>RECOMMENDATION</u>

Accordingly, it is recommended that Defendants' motion to dismiss, (Dkt. #26), be granted and that claims against Defendants Enge and Neal be dismissed, without prejudice, for lack of proper service. The Court recommends that Defendant TDCJ be dismissed, with prejudice. Moreover, the Court recommends that Defendants' motion to dismiss, (Dkt. #40), be granted and

that all claims against Defendants Davis and Lumpkin be dismissed, with prejudice, for the failure to state a claim.

The Court further recommends that Hestand's motion for an extension of time to effect service, (Dkt. #32), and motion for substituted service, (Dkt. #41), be denied. Finally, the Court recommends that claims against all remaining defendants be dismissed, without prejudice, and that the statute of limitations be suspended for a period of 60 days upon issuance of the final judgment.

The Clerk of Court is directed to mail a copy of this Report and Recommendation to Plaintiff Hestand himself at the following address: TDCJ Michael Unit, 2664 FM 2054, Tennessee Colony, Texas, 75886—with an acknowledgment card.

Within fourteen (14) days after receipt of the Magistrate Judge's Report, any party may serve and file written objections to the findings and recommendations contained in the Report.

A party's failure to file written objections to the findings, conclusions and recommendations contained in this Report within fourteen days after being served with a copy shall bar that party from *de novo* review by the district judge of those findings, conclusions and recommendations and, except on grounds of plain error, from appellate review of unobjected-to factual findings and legal conclusions accepted and adopted by the district court.  *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*).

**So ORDERED and SIGNED this 21st day of September, 2021.**

JOHN D. LOVE
UNITED STATES MAGISTRATE JUDGE